UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HENRY CARTER | : | NO. 3:00CV1132(AWT) |
| V. | : | |
| WARDEN WEZNER, ET AL | : | MAY 19, 2006 |

## DERENDANT'S TRIAL MEMORANDUM ORDER

Defendants Warden Wezner, Unit Manager Muccino, Lt. Cuervo, Lt. Kuhr, C/O

Vernon and C/O Crowell, hereby offer their portion[1] of the trial memorandum pursuant to

this Court's Order dated February 27, 2006.

### 1.    TRIAL COUNSEL:

**For the Plaintiff:**

   None:  plaintiff is *pro se*.

**For Defendants:**

   Robert B. Fiske, III
   Assistant Attorney General
   Office of the Attorney General
   110 Sherman Street
   Hartford, Connecticut  06105
   Tel. (860) 808-5450
   e-mail: robert.fiske@po.state.ct.us

### 2.    JURISDICTION:  The jurisdiction of the court is invoked under the

provisions of Sections 1331, 1343(3) and 1367(a) of Title 28, and Sections 1983 and

1988 of Title 42 of the United States Code.

---

[1]  The undersigned counsel for the defendants has not received any correspondence from the plaintiff, either by letter or submission of his portion of the pre-trial memorandum, for discussion or joint submission.  Thus the defendants are providing their half only.

3.   **JURY/NON-JURY:** This is a court case.  The plaintiff did not claim a trial by jury.

4.   **NATURE OF CASE:** This is a civil rights claim brought by the plaintiff Henry Carter, pursuant to Section 1983 of Title 42 of the United States Code, against six current or former State of Connecticut Department of Correction Officials alleging that they violated his Eighth Amendment rights when they denied him food for a seven day period while he was incarcerated at Cheshire Correctional Institution in June, 1999.

5.   **STIPULATIONS OF LAW AND FACT:**

1.   At all times relevant to the allegations in the complaint, the plaintiff was a sentenced and convicted inmate and residing in the Cheshire Correctional Institution in Cheshire, Connecticut.

2.   At all times relevant to the plaintiff's complaint, the defendants were employed by the State of Connecticut Department of Correction.  Any and all actions were taken in accordance with their official duties and consequently, they were acting under color of law.

6.   **PLAINITFF'S CONTENTIONS:**

See the plaintiff's trial memorandum.

7.   **DEFENDANT'S CONTENTIONS:**

1.   On or about June 15, 1999, the plaintiff voluntarily refused to comply with the prison rules for proper footwear during feeding time and was denied access to the food line as a result.

2.   The rules for proper footwear were set forth in the Cheshire Correctional Institution Inmate Handbook, dated June 10, 1998, of which the plaintiff was issued a copy.

3.   The plaintiff was repeatedly told that if he complied with the footwear rules he could join the food line, but he refused.

4.   Any denial of food was due to his own action and not of the defendants.

5.   The defendants who were aware of the plaintiff's voluntary refusal to comply with the prison rules did nothing to prevent or obstruct him from complying with the rules and obtaining meals and in fact directed him to wear the proper footwear.

6.   At all times during the plaintiff's voluntary refusal to comply with the prison rules for footwear, he did not have a permission slip from a doctor or staff person to wear the open toed shoes he desired.

7.   At all times, the plaintiff had the opportunity to wear proper footwear to join the food line, but he refused.

8.   At times during his voluntary refusal to wear the proper footwear to the food line, the plaintiff's cell door was open and food was made available to him without requiring him to wear proper footwear, but he refused to get up, and/or exit the cell to take the food offered, but other times he did take the food.

9.   During the same time of the plaintiff's voluntary refusal to wear the proper footwear to the food line he did wore the proper footwear when he exited the cell for recreation and to use the telephone, all without complaint.

10.   At no time during his alleged denial of meals did the plaintiff complain to any staff person.

11.   None of the defendants are trained medical personnel.

12.    At all times alleged in the complaint, the defendants acted in the best interest of the plaintiff, inmates and staff, by enforcing the Institution's rules regarding proper footwear.

13.    By voluntarily refusing to comply with the footwear requirements the plaintiff did nothing to mitigate his alleged food denial, but rather, purposefully created it.

14.    At no time during the alleged food denial, or after, did the plaintiff request, require, or receive, medical treatment other than a foot operation four months later.

15.    At no time during the incidents alleged in the complaint did the plaintiff suffer from a serious medical condition, nor did his condition ever constitutive a serious medical condition.

16.    Any injuries, losses or damages which the plaintiff incurred as a result of the alleged incidents were directly or proximately caused by the plaintiff's own negligent, reckless or intentional conduct, which was the, or a substantial, factor in producing the alleged injuries.

17.    The plaintiff did not fully exhaust his administrative remedies prior to filing the instant lawsuit as required under the Prison Litigation Reform Act.

18.    If the action or inaction of any defendant is determined to be negligent, the defendants are protected by sovereign immunity and C.G.S. 4-165.

19.    At all times alleged, the defendants acted reasonably and in accordance with the law as it applied in the circumstances with which they were faced.


## 8.    LEGAL ISSUES:

1.    Whether an alleged denial of food to the plaintiff for seven days constitutes cruel and unusual punishment in violation of the Eighth Amendment?

2.    Whether an alleged denial of food to the plaintiff for seven days constitutes deliberate indifference violation of the Eighth Amendment?

3.    Whether the alleged actions of the defendants in upholding prison policy of not permitting inmates to access the food line wearing open toed shoes without staff or medical permission violated the plaintiff's Eighth Amendment rights if it resulted in the plaintiff not eating?

4.    Whether the Eighth Amendment required the defendants to provide the plaintiff with meals in his cell if he voluntary refused to comply with the prison rules for footwear and thus could not access the food line for safety and sanitary reasons.

5.    Whether the Eighth Amendment rrequired the defendants to force feed the plainitff if he refuesd to eat meals provided to him over a seven day period?

6.    Did the plaintiff sufficiently allege the personal involvement of each of the defendants in an alleged constitutional violation?

7.    Did any of the defendants violate the plaintiff's Eighth Amendment rights with a deliberate and wanton infliction of pain, or did they act in a good faith effort to maintain order and discipline by requiring the plaintiff to comply with prison rules absent permission to do otherwise?

8.    Do any of the defendants have medical training or ability to properly diagnose injury or physical condition?

9.    Did the plaintiff's alleged food denial result from the actions of the defendants or the plaintiff?

10.    Did the plaintiff request any medical care for malnourishment at any time during or after the events alleged in the complaint?

11.    Did the plaintiff make any complaints to staff or others about a lack of food at any time during the alleged deprivation?

12.    Did the plaintiff suffer from any serious medical condition as a result of the alleged actions of the defendants?

13.    Did the plaintiff require any medical treatment or hospitalization as a result of the alleged actions of the defendants?

14.    Could any of the plaintiff's alleged injuries been lessened or eliminated by the plaintiff's compliance with the prison rules for footwear?

15.    Could any of the plaintiff's alleged injuries been lessened or eliminated by the plaintiff's eating of meals offered to him at his cell?

16.    Did any of the defendants cause injury to the plaintiff?

17.    Was the plaintiff required under the PLRA to fully exhaust his administrative remedies prior to filing this lawsuit?

18.    Is this action barred by the plaintiff's failure to completely exhaust his administrative remedies as required under the PLRA?

19.    Are any of the defendants sued in their official capacity for money damages?

20.    Is this action barred as to the defendants in their official capacity by the Eleventh Amendment to the Untied States Constitution?

21.    Did any of the actions or inactions of the defendants constitute negligence?

22.    Are the actions or inactions of the defendants protected by qualified immunity?


## 9. **VOIR DIRE QUESTIONS:**

Not applicable.  This is a court case.

## 10. LIST OF WITNESSES:

1.    Warden Wezner: Former Warden of Cheshire Correctional Institution. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint and will refute the allegations made against him.

2.    Unit Manager Muccino: Former Unit Manager at Cheshire Correctional Institution. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint and will refute the allegations made against him.

3.    Lieutenant Cuervo: Lieutenant at Cheshire Correctional Institution at the time of the events alleged in the plaintiff's complaint. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint and will refute the allegations made against him.

4.    Lieutenant Kuhr: Lieutenant at Cheshire Correctional Institution at the time of the events alleged in the plaintiff's complaint. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint and will refute the allegations made against him.

5.    Correctional Officer Vernon: C/O at Cheshire Correctional Institution at the time of the events alleged in the plaintiff's complaint. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint and will refute the allegations made against him.

6.    Correctional Officer Crowell: C/O at Cheshire Correctional Institution at the time of the events alleged in the plaintiff's complaint. He may testify as to policies and rules in

effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint and will refute the allegations made against him.

7.  Dr. Edward Blanchette: Doctor employed by DOC at the time of the events alleged in the plaintiff's complaint. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint, including, but not limited to the plaintiff's medical condition as it relates to his allegations against the defendants.

8.  Counselor Price: Counselor at Cheshire Correctional Institution at the time of the events alleged in the plaintiff's complaint. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint.

9.  Advocate J. Egan: Advocate at Cheshire Correctional Institution at the time of the events alleged in the plaintiff's complaint. He may testify as to policies and rules in effect at Cheshire at the time of the events alleged in this case as well as other issues raised by the plaintiff's complaint.

Although unlikely, the defendants reserve the right to add additional witnesses in response to those witnesses and/or exhibits listed by the plaintiff in his trial memorandum

## 11. EXHIBIT LIST:

501.  Relevant Department of Correction Log Book Entries from June 15, 1999 to June 28, 1999;

502.  Relevant medical records of the plaintiff from June 1999 to October 1999;

503. Department of Correction's disciplinary history of the plaintiff 1990 - 1999;

504. Plaintiff's Grievance history from June 1999 to October 1999;

505. Relevant pages of the Cheshire Correctional Institution's Inmate Handbook, dated June 10, 1998;

506. Relevant sections of the Department of Correction Administrative Directives;

507. Relevant pages of the plaintiff's Central File;

508. Criminal conviction record of the plaintiff.

Although unlikely, the defendants reserve the right to add additional exhibits in response to those witnesses and/or exhibits listed by the plaintiff in his trial memorandum.

### 12.  DEPOSITION TESTIMONY:

None.

### 13.  REQUESTS FOR JURY CHARGE:

Not applicable.  This is a court trial.

### 14.  ANITICPATED EVIDENTIARY PROBLEMS:

Unknown.  In the absence of the plaintiff's proposed witness and exhibit list, the defendants are unaware of what information the plaintiff may seek to admit into evidence.  Consequently, in an abundance of caution, the defendants reserve the right to submit a motion in Limine and supporting memoranda to exclude any such information on whatever evidentiary grounds are appropriate.

### 15.  PROPOSED FINDINGS AND CONCLUSIONS OF LAW:

**A.  Proposed findings of fact**

1.  The plaintiff suffered a minor foot injury on or about June 13, 1999.

2.    Two days later, on June 15, 199, the plaintiff refused to wear the proper footwear to go through the chow line.

3.    A Department of Correction official stopped the plaintiff and instructed him that he must return to his cell and put on proper shoes. The plaintiff refused. He was then ordered to lock up in his cell.

4.    The plaintiff was directed to wear proper footwear the next time he wanted to enter the chow line.

5.    The plaintiff did not have a permission slip from the medical department or any staff member permitting his use of improper footwear.

6.    The inmate handbook and Cheshire required all inmates to wear shoes or if approved, sneakers, at all times outside their cell. The plaintiff was not wearing such shoes when he entered the chow line and refused to comply with the rule over the next few days, despite being instructed to do so.

7.    Despite the plaintiff's noncompliance with the rules, food was brought into the unit and made available to him on numerous occasions. A few times the plaintiff refused to get up off his bunk or come out of the cell for food even though his cell door was open and the food was available to him. Other times he did eat.

8.    During the dates he was allegedly incapable of wearing shoes or sneakers to the chow line due to his foot injury, he was able to wear such shoes when he left his cell for recreation and to use the telephone.

9.    On or about June 20, 1999 the plaintiff was seen by sick call in the housing unit and he made no complaint about a lack of food, nor did he appear to be in physical or mental distress.

10.     After the medic's visit in his cell, the plaintiff was put on a non-emergency list to be seen by facility doctor, and did so two days later on or about June 22, 1999.

11.     During the visit with the doctor, the plaintiff only complained about his foot and requested permission to wear open shoes.  The plaintiff made no complaint that he had been denied food, or that a lack of food was causing his health to suffer, and no such notice was made by the doctor or medical staff.

12.     After seeing the doctor, the plaintiff was given a special pass to wear open toed footwear.

13.     No other action was taken regarding his foot until four months later when he received surgery over two days in October 1999.  After the operation, the plaintiff received a second pass to wear open toed shoes (slippers).

14.     The plaintiff never complained of any health issues resulting from an alleged denial of food and he has not been treated for any.

### B.     Conclusion of law

1.     In this circuit, personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.  *Gill v. Mooney*, 824 F.2d 192, 196 (2nd Cir. 1987); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2nd Cir. 1977). Supervisory responsibility alone is not enough to confer exposure to liability.  *Williams v. Smith*, 781 F.2d 313, 323 (2nd Cir. 1986).  "A plaintiff must allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2nd Cir. 1986).  The claims against Warden Wezner and Unit Manager Muccino are just such a supervisory liability claim and there is no liability concerning the remainder of the defendants either.

2.    To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for a prisoner's health and interest. *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). No such circumstances exist in this case.

3.    The plaintiff's allegations do not constitute deliberate indifference under the Eighth Amendment. There was no wanton infliction of unnecessary pain by any of the defendants, the alleged deprivation was not sufficiently serious, and the plaintiff did not suffer a serious medical condition as a result of any of the defendant's actions. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Wilson v. Steiter*, 501 U.S. 294, 298 (1991); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Additionally, none of the defendants acted with "a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

4.    There is no liability under §1983 without proof of causation. *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, (1987); *Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 247, 85 L.Ed.2d 781 (1985). In this case, the plaintiff has not alleged that he suffered any harm or injury as a result of the alleged lack of food, or that the lack of food was due solely to the actions or inactions of the defendants.

5.    To the extent this action is brought against the defendants in their official capacities, it is barred by the Eleventh Amendment to the United States Constitution. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 Sect 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

6.    In the event liability is found against one or more of the defendants, under the circumstances of this case the defendants are entitled to qualified immunity, because at

all times they acted reasonably and neither knew, or should have known, that their actions violated any constitutional rights of the plaintiff. *Saucier v. Katz,* 533 U.S. 194, 196 (2001). Qualified immunity is a judicially created affirmative defense which protects state officials who are sued in their individual capacity for civil damages under Title 42 U.S.C. §1983. *DeSpain v. Uphoff,* 264 F.3d 965, 971 (10th Cir. 2001). But no unlawful conduct occurred in this case.

7.    Compensatory damages must be based upon injuries actually sustained as a direct consequence of the unlawful conduct of the defendants, not on speculation or sympathy. *Memphis v. Community School District v. Statchura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed2d 249 (1989). But no unlawful conduct occurred in this case.

8.    In the event the plaintiff were to succeed on his constitutional claim, he would not be entitled to any compensatory damages due to his failure to mitigate his damages by complying with the footwear rules. The plaintiff's refusal to wear the proper shoes was the direct result of his not being admitted to the chow line. Since he could have joined the chow line by wearing the proper shoes, but did not, he cannot recover damages since he did nothing to reduce the alleged harm done to him. *Jackson v. Wheatley*, 464 F.2d 411 (8th Cir. 1972); *Miller v. Lovett*, 879 F.2d 1066 (2nd Cir. 1989).

9.    Punitive damages are available only where particular defendants have acted with malicious intent to violate the plaintiff's federal rights or unlawfully injure him with a callous or reckless disregard for his rights. Its purpose is to punish outrageous conduct. *Memphis v. Community School District v. Statchura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed 2d 249 (1989). *Vasbinder v. Anback*, 926 F.2d 1333 (2nd Cir. 1991). No such conduct occurred in this case.

10.    The defendants are entitled to judgment because the plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit as required by the Prison Litigation Reform Act,. 42 U.S.C. § 1997e(a).  The PLRA specifically provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until . . . administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies without exception "to all prisoners seeking redress for prison circumstances or occurrences". *Porter v. Nussle*, 534 U.S. 983, 992 (2002); Connecticut Department of Correction Administrative Directive 9.6, para. 3 & 5.


### 16.    TRIAL TIME:

The defendants do not expect the trial to take more than three days.


### 17.    FURTHER PROCEEDINGS:

The defendants are unaware of the necessity of any further proceedings prior to trial.


### 18.    ELECTION FOR TRIAL BY MAGISTRATE

The defendants would agree to a trial before a magistrate.

DEFENDANTS
WEZNER, ET AL

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
        Robert B. Fiske, III
        Assistant Attorney General
        MacKenzie Hall
        110 Sherman Street
        Hartford, CT  06105
        Fed. Bar No, ct17831
        Tel. (860) 808-5450
        e-mail: robert.fiske@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed this, the 23rd day of May, 2006, to:

Mr. Henry Carter, #177179
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410

_____
        Robert B. Fiske, III
        Assistant Attorney General